SCHNEIDER *v.* TOWNSHIP OF BROWN.

1. HIGHWAYS AND STREETS—ESTABLISHMENT—WIDTH — PRESUMPTION.

Section 4036, 2 Comp. Laws, defining the width of the public highways of the State, supports a presumption that a highway, laid out across a ravine and creek extended at a uniform width across the ravine.

2. SAME—WATER RIGHTS—PRESCRIPTION—RIGHTS ACQUIRED.

The building of a bridge on the section line across a mill pond occupying a ravine, the road for many years having diverged from the section line to cross the ravine on the dam, is not such a use of the land occupied by the bridge as will operate to invest the public with any rights exceeding the bounds of actual user, and hence the township had not the right, as a matter of law, to replace the bridge by an embankment and culvert to the injury of the mill pond.

3. SAME—RIGHTS OF ABUTTING LANDOWNERS—ENCROACHMENT OF EMBANKMENT.

The rights of the public in a highway do not give it any right to place a part of an embankment upon the lands of an abutting owner.

4. SAME—CONSTRUCTION—INJURY TO ABUTTING OWNER.

> A township, in constructing an embankment for a highway, has no right to so construct it as to cause the deposit of earth in a pond of a landowner or upon his land.

Error to Manistee; McAlvay, J. Submitted October 13, 1905. (Docket No. 58.) Decided November 21, 1905.

Case by Casper Schneider against the township of Brown for damages to a mill pond caused by the maintenance of an embankment in a highway. There was judgment for plaintiff, and defendant brings error. Reversed.

A highway has existed on the section line between sections 9 and 16 in defendant township since the year 1869. There is no record evidence of its establishment. There is testimony in the record to the effect:

"When I first went out there to live, the highway was not laid out. If I remember right, it was laid out in 1868 by the township authorities of the township of Brown; that was before Mr. Schneider came there. I think we worked on the road a short time after it was laid out. One end of the road was opened first, except that it turned, and went down over the dam there, and then came back. It followed right along. It was not always on the line; it diverged some."

It is said by counsel for defendant that in 1884 there was a resurvey of the highway, of which a record was made. It appears to have been a highway four rods in width, as indicated by understanding and marked by fences, including the fences on plaintiff's land. Plaintiff owns land in both sections, and through his land a stream, called in the record "Chief Creek," runs in a direction generally south, and crosses the line of said highway. Prior to the year 1880, the highway was not, and could not be, used over this creek and the ravine in which it ran. Using the highway to or near the banks of the ravine on either side, travel at this point was to the south of the section line, and the stream was crossed by way of a dam constructed some 17 rods south of the line of the highway. The

dam was there when plaintiff, some 28 years before the trial, purchased the land. It was only 2 or 3 feet high and was used by the public for crossing the creek until 1880, or perhaps 1882, when the township built, substantially on the line of the highway, a bridge 16 feet in width, spanning the ravine and the stream.   The bridge was once rebuilt, was used by the public as a part of the highway until 1902, when it became infirm, and for it was substituted an embankment of earth and timbers, through and under which the water of the creek passes by way of a culvert.   The embankment is 18 feet wide on top, and is at all points less than 66 feet wide at its base.   There is testimony tending to prove that the center line of the embankment is south of the center line of the bridge it replaced, and that the base of the embankment rests upon land of plaintiff south of the south line of the highway.   There is also testimony tending to prove that the embankment was built with reference to a north line of the highway east of the embankment, claimed by plaintiff to be a correct line, to correspond with which he moved his fence to the south, into the highway, as before indicated.   Some years (4 or 5) before the first bridge was built, plaintiff, who operated a sawmill at a point below his dam, raised the dam 7 or 8 feet, as a consequence setting back the water in his pond to, and, as he testified, some 15 rods beyond the line of highway, all upon his own land.   Plaintiff's testimony is to the effect, also, that no uniform head of water was maintained, but that boards were used, as occasion demanded, to increase the height of the dam, and so to raise the water in the pond. With this pondage of the water, the bridge, built upon posts, did not, it is claimed, interfere, nor with the storage of logs in the pond.   It seems to be conceded that the building of the embankment in question was by the direction and authority of the defendant township.   Plaintiff complains that the embankment has filled his pond, diminished its capacity for storage of water, and interrupted the free flow of water thereto.   He also claims

that the embankment is built in part, at least, upon his land, and is constructed without retaining walls of any sort, resulting in a wash of earth from the embankment to and upon his land and into the pond. The covering with earth of logs, placed in the pond to be sawed, and the diminished value and the diminished earning capacity of the mill by reason of a diminished mill pond, are specifications of injury for which, in an action on the case against the township, damages were claimed.

The position of plaintiff is thus stated by his counsel:

"He did not deny the existence of a highway by user along the section line crossing his property, but he did deny the right of the township to connect this highway, at the point where it crossed his pond, with any sort of an embankment or fill that would interfere with the full use and enjoyment of his pond and water power. He had always acquiesced in the maintenance by the township of the wooden bridge, for the reason that that did not interfere with his property rights in the pond."

And again:

"The plaintiff in this case claims that the township of Brown had no right whatever to put in this fill or embankment, or fill up this space from one side of the bank to the other with this material, sand, and dirt, or grade and fill there, so to speak, that in doing so it trespassed upon his rights as the owner of that property, and filled up his pond to a large extent. That furthermore, in putting it in, the way it was put in, there was more serious damage done to the plaintiff because of the manner in which it was constructed, and that there was no effort made by the township of Brown to confine this embankment further by sodding or putting in timbers, or in any other way to prevent the water washing down from passing across it, and by the elements washing this material into the pond from both directions."

Defendant's position is that a highway 4 rods wide has existed across the creek since 1868; that the public right to use the land within the highway as laid out is, and has always been, superior to the right of plaintiff to back and hold water upon the highway; that the building,

and for 20 years maintaining, a bridge across the ravine on the line of the highway were acts in assertion of rights in the highway as laid; that in electing to build an, embankment with a passage for water, instead of rebuilding the bridge, and in building the embankment, the township acted in its governmental capacity, built the embankment entirely within the limits of the highway, and in a proper manner; that, if plaintiff has been occasioned any loss thereby, it is damnum absque injuria.   The further issue was made that plaintiff has estopped himself to question the right of the township to build the embankment as and where it is built.

Some of the alleged facts upon which estoppel of plaintiff is rested are:

1. He fenced his land down to and in the ravine in such way as to indicate a highway four rods wide, within the limits of which the embankment is built.

2. That a few years before the embankment was made, plaintiff had the lines surveyed, and insisted that the road was too far north, and should be changed to a line further south and towards his mill.

3. That he saw the stakes locating the proposed embankment, and became surety for his son, who did the work; made no objections to the placing of the embankment.

4. Plaintiff was present in 1902 at the public meeting which discussed and determined the manner of replacing the wornout bridge, and, while announcing his preference for an iron bridge, did not assert any right of his which the building and maintenance of an embankment would interfere with, nor suggest resulting injury to himself or his property.

5. He presented in 1903 to the township board a claim apparently prepared in the office of his attorney, reading as follows:

To damages caused to the said Casper Schneider by the township authorities in making a fill in the public highway across Chief creek, where there formerly was a wooden bridge; the said highway being between section nine and section sixteen, in township twenty-two north, of range fifteen west, and the said damages being more particularly described as follows:

142 MICH.—4.

"To damage to mill pond and water power, caused from the earth and sand caving into the said pond and filling the same _____$500

"To 50 M. feet of hardwood logs buried by the caving in of the said earth and sand in said pond, at $8 per M.____ 400

    "Total _____$900 "

It is said that the form of this claim negatives the idea and fact of damage except as the same arose from improper construction of the embankment. This claim was the second one presented; the first one, made a month previous, reading:

"TO THE TOWNSHIP BOARD.

"*Gentlemen:* In order to save litigation in regard to damages sustained by me by having my logs covered and pond filled with sand by the wash that has filled it, I will settle with the township for the sum of three hundred dollars ($300) for damages done and all damages that may be done hereafter.

"Yours truly,<br>[Signed] "CASPER SCHNEIDER."

Both claims were verified by plaintiff, and a part of the verification statement with the later claim was:

"Deponent further says that he has heretofore rendered to the said township of Brown a bill for a less amount, but that when the former bill was rendered he was not fully aware of the extent of his damage on account of the action of the said township, as aforesaid, and as to the cost of repairing the same, in the event that the same could be repaired."

The trial court submitted to the jury certain questions of fact, and a general verdict for plaintiff for $650 was returned, and judgment was entered on the verdict. Defendant presented 20 requests to charge, all of which, "except as they may be included in the main charge" were refused. In the main brief for appellant it is said that the important questions involved are raised by the defendant's 14th, 15th, and 16th requests refused, and by the charge given as indicated in the 13th and 15th assignments of error. The requests to charge, referred to, are:

"14. As to the highway, I charge you that the proof shows that in 1868 a highway was laid out on the east and west section line, between sections 16 and 9. That it was opened and traveled on each side of the valley; the traveling diverging to the south on either side of the valley, going down and crossing the creek at the mill dam. That in 1876 plaintiff bought the property described in this case; the dam at that time being a low dam, as he states it, four feet high. That he afterwards raised the dam, and in so doing flooded the water back to the highway and beyond. In 1888 the township constructed a wooden bridge across the valley on the line of the highway, and have ever since maintained either a wooden bridge or dirt and wooden bridge, which has been used by the public. This laying out the highway and afterwards opening it gave the township a right of way 4 rods or 66 feet wide, and the testimony in this case conclusively shows that the township has never abandoned or in any way lost its right in and to said highway.

" The plaintiff could not by flooding the water back in said pond or creek onto the land in the limits of the highway acquire any rights adverse or superior to the rights of said township, but any possession he may have had of said land in said highway must be held as having been with the consent and acquiescence of the township, and not adverse thereto.

"That to acquire any rights by adverse possession or adverse user, the adverse possession or adverse user, in order to ripen into a right, must be open, notorious, and adverse, and it must be so brought to the attention of the owner of the soil. In this case, the township, being in the possession and use of the highway along the line in question, was in law in possession to the boundary line of the highway on either side, and the plaintiff could acquire no presumptive or adverse rights by flooding or taking possession of any part of said highway, unless he made such possession open, notorious, and gave the public in general, and the township in particular, notice that he claimed an ownership in the soil and a right to flood the same.

" The proof in the case fails to establish such claim, but, on the contrary, does show that plaintiff recognized the south boundary line of the highway as the boundary of his land, and made no claim adverse to the rights of the township to the land inside of the limits of said highway.

Hence he has never acquired any prescriptive or adverse rights to any of the land in said highway.

"15. In law the use of the highway by the public by the erection and use of the wooden bridge was such as to give the defendants possession of, and title to, the ground on two rods each side of the section line between sections 16 and 9, here in question; and, if the wooden bridge deviated from the true line within the limits of the four rods, the township might rightfully, in the erection of the new bridge, change the location, so long as it was kept inside of the four rods.

"16. The right of the township to the highway in question is not based on user, but on grant or condemnation, and that said plaintiff had no right, by prescription or otherwise, at the time said first wooden bridge was constructed, and has and could not have acquired any since that time, as said defendant has been in the actual possession of said highway at least during all that time since said bridge was built, and I charge you, as a matter of law, that such claim is true.

"(a) The only way that said plaintiff could acquire any prescriptive rights in the land included in said highway would either be by deed from said township, or by taking possession of the whole, or some part thereof, to the exclusion of said township. This might be done by the erection of a fence or other barrier, and claiming it to be the true boundary line, and thereafter continuing in the open, notorious, visible, and adverse possession under a claim of title or right. The mere flooding the water of the creek onto, over, or beyond the highway, unless done under a claim of right or title brought home to the attention of the defendant, would not ripen into a title, no matter how long continued. The possession of the defendant being actual, it must be considered exclusive, and sufficient to authorize the use of the entire width of the highway whenever the township authorities should elect. The use by the plaintiff, so far as the proof shows any use, was permissive and not adverse.

"(b) The highway had been appropriated to a public use, and no adverse interest could be acquired until some assertion of an adverse interest was so made that the public should be notified. The proof shows that the general understanding was that it was a highway, and there is no proof that any one ever understood that plaintiff had or claimed any rights within the limits of the four rods.

Under this proof, the plaintiff must be held to have no right within the four-rod limit."

The thirteenth and fifteenth assignments of error are:

"13. In instructing the jury: 'But I charge you, as a matter of law, that Mr. Schneider, by reason of having rights in this water privilege before there was any highway there, and by reason of the fact that in the early days the travel was down over the dam, and the highway proper came to the banks, as I take it, and that the highway has crossed the valley, at least above part of the way over the water that Mr. Schneider flooded, the land has been used as a highway by user for all these years, and has been used while Mr. Schneider has used his part or rights, whatever they may be, of floodage, each using and exercising such rights as it claimed to have without interfering with the other. On that account, I shall charge you that Mr. Schneider did acquire rights to back up, if he did back it up, under the bridge, for as far as he did back it up.'  *   *   *

"15. In instructing the jury: ' And I charge you further, that if you find that Mr. Schneider, as a matter of fact, has used, as he claims, and as witnesses on his side have testified tending to show, the space under the bridge for whatever floodage you find, and has for years backed the water of his dam up through that space, that, as a matter of law, the township had no right to put a fill in there or a bridge in there that would deprive him of the use which he had had of that part of the water under the bridge, if you find he did use it.' "

*Pratt & Davis*, for appellant.

*Frank L. Fowler*, for appellee.

OSTRANDER, J. (*after stating the facts*). It is clear that, extending from the ravine in either direction, there was, at the time plaintiff raised his dam, a road which was four rods wide, which might become, if it had not already become, by user a public highway. There is no record evidence of the laying out of the road. At the time plaintiff raised his dam, no use whatever had been made of the ground through the ravine for highway purposes. It is to be presumed, we think, if any presump-

tions may be indulged, that the highway, as laid, if one was laid, was a continuous highway, extending at a uniform width across the ravine and creek. The language of the statute supports such presumption. 2 Comp. Laws, § 4036. Travel was interrupted on the line of the highway by the formation of the ground, the presence of the creek, and the absence of a bridge or other means of crossing. Some years after the dam was raised (the precise time being uncertain, but it was probably not more than six nor less than four years), the township determined to build a bridge to connect and make continuous the highway. Plaintiff, for the township, built this bridge. As constructed, it interfered little, if any, with the use plaintiff was then making of the land. Then, for the first time, travel across the ravine on the line of the highway began.

We are referred to no authority which warrants us in holding, as a matter of law, that the use of the particular ground then first begun operated to invest the public with any rights exceeding the bounds of actual user. The cases of *Bumpus* v. *Miller*, 4 Mich. 159, and *McNamara* v. *Railway Co.*, 95 Mich. 545, cited by counsel for appellant, do not rule the point. There had been here, after the use of the remainder of the highway had begun, a use of the land which might be said to be inconsistent with its use other than by bridging it as a highway. Whether the township had, except by acquiescence of plaintiff, the right to bridge it, we need not determine. There is no complaint made of that action. Counsel for appellant says that the right of defendant to build the embankment in 1902 was the same as it was in 1880. That may be conceded, and it is still necessary to show that such right existed in 1880, or to show acquiescence in the claim of the township to have such a right.

The particular errors assigned, which, under the rules, we are permitted to consider, and the theories of rights asserted by counsel for the respective parties, make treatment of the case here somewhat difficult. The requests

to charge, above set out, are open to the criticism, not only of asserting rights of defendant which cannot be, as matter of law, sustained, but of assuming facts which are disputed.   On the other hand, the position of counsel for plaintiff may or may not be consistent with the facts, depending upon what a jury may, viewing all of the testimony, find the facts to be.   There is testimony in the record from which the jury might have found that there was, as early as 1869, an intended and asserted appropriation by the public of a continuous strip of land along the section line, four rods in width, known to plaintiff when he purchased his land, and never disputed, or intended to be disputed, by him—rather affirmed and confirmed by him—until he brought this suit; that use of this strip of land across the ravine was postponed until the township should erect a suitable means of crossing; that all of the proceedings on the part of the township authorities were predicated upon this claimed appropriation and right, and were without protest from plaintiff, or assertion by him of any conflicting right, and that, with a pond 11 by 17 rods in size south of the embankment, a culvert through the embankment, permitting the free flow of water, and an indefinite space north of the embankment in which water may stand, plaintiff has in fact lost no use of his mill from a diminished flow or diminished head of water, attributable to the embankment, properly constructed.   While contending for more than this, we think the requests to charge preferred on the part of defendant fairly raise the point that the case should be submitted to the jury upon the theory above indicated, and that the charge as given and as questioned in the fifteenth assignment of error was not warranted.   The jury had already been charged, as matter of law, that plaintiff had not by his conduct acquiesced in the proceeding to build an embankment; a portion of the charge upon which the twelfth assignment of error is based. This alleged error is not mentioned in the brief for appellant, and the matter is referred to only as explanatory of

what is here said and of that portion of the charge set out. If a jury should find that the embankment was built in part upon plaintiff's land, outside the limits of the highway, of course no rights of the public in the land within the highway would warrant such a trespass. *Vanderlip* v. *City of Grand Rapids*, 73 Mich. 522 (3 L. R. A. 247). The same would be true if the embankment is so constructed that the inevitable consequence is the deposit of earth upon the logs of plaintiff in his pond, or upon the land of plaintiff, to his injury. *Ferris* v. *Board of Education of Detroit*, 122 Mich. 315. No other questions discussed, which we are at liberty to consider, are likely to arise upon a new trial.

Judgment is reversed, with costs, and a new trial granted.

Moore, C. J., and Grant, Blair, and Hooker, JJ., concurred.